No. 02-781

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 145

STEPHEN CAPLIS and HOLLYWOOD
TRAILER COURTS, INC., a Montana Corporation,

      Plaintiffs and Respondents,

    v.

JAMES P. CAPLIS and JOHN M. CAPLIS,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DV-00-821
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

            Perry J. Schneider, Milodragovich Dale Steinbrenner & Binney, Missoula,
Montana

      For Respondents:

            W. Carl Mendenhall, Sean M. Morris, Worden Thane & Haines, Missoula
Montana

Submitted on Briefs:  March 20, 2003

Decided:  June 8, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Plaintiffs and respondents, Stephen Caplis and Hollywood Trailer Courts, Inc., filed a Complaint in the Montana Fourth Judicial District Court, Missoula County, alleging that the defendants and appellants, James P. Caplis (James) and John M. Caplis (John), abused their positions as directors, officers and shareholders of Hollywood Trailer Courts, Inc.  The defendants did not timely answer and the Clerk of the District Court entered their first default.  This was followed by the entry of a default judgment.

¶2     Upon the defendants' request, the District Court set aside the default judgment and the defendants thereafter filed their Answers, Counterclaims and Demand for a Jury Trial.  The defendants subsequently failed to attend a status conference, a show cause hearing to show why their second default should not be entered and the hearing prior to entry of final judgment.  The District Court thereafter entered the defendants' second default judgment.  It then denied their later motion made pursuant to Rule 60(b), M.R.Civ.P., to dismiss the second default judgment.  The defendants appeal the District Court's denial of their Rule 60(b), M.R.Civ.P. motion and its dismissal of their counterclaims.  We affirm.

¶3     We address the following issues on appeal:

¶4     1.  Did the District Court abuse its discretion in denying Appellants' Motion for Relief from Judgment pursuant to Rule 60(b), M.R.Civ.P.?

¶5     2.  Did the District Court err in dismissing Appellants' counterclaims with prejudice?

2

## BACKGROUND

¶6     At the time Stephen Caplis (Stephen) and Hollywood Trailer Courts, Inc., filed the Complaint in this matter, Stephen was an officer, director and shareholder of Hollywood Trailer Courts, Inc., a Montana Corporation located in Missoula, Montana.  Stephen and his two brothers, James and John, were at all times relevant to this action the three sole shareholders of Hollywood Trailer Courts.

¶7     The plaintiffs filed their Complaint on October 23, 2000.  Neither James nor John responded to the Complaint and the plaintiffs thereafter requested entry of their default.  The Clerk of the District Court for the Fourth Judicial District entered default judgment against the defendants on December 22, 2000, and on January 9, 2001, James and John filed a consolidated motion and brief to set aside the default, alleging inability to retain counsel subsequent to service and lack of personal service on James.  On February 27, 2001, the District Court, finding good cause, set aside the default judgment and James and John, on March 21, filed separate but identical Answers, including five counterclaims against Stephen.

¶8     On November 21, 2000, the plaintiffs served their first discovery requests.  Although John at no time answered this or any subsequent discovery request, James produced a substantial amount of documents.  However, he failed to produce sufficient documents to account for over $150,000 in corporate assets.  Among other incomplete discovery answers, James also failed to note the existence of various corporate bank accounts and likewise failed to declare the account and check numbers for checks that were not produced.

3

¶9 The plaintiffs served their second discovery requests on August 9, 2001. Neither James nor John answered any part of the second request for discovery. Thereafter, on October 9, 2001, the plaintiffs filed a motion to compel the defendants' responses. Prior to ruling on the plaintiffs' motion to compel, the defendants' attorney filed a motion to withdraw as attorney of record and the District Court granted the request in an Order dated October 22, 2001. In its order releasing the defendants' attorney of record, the District Court stated that the defendants "shall receive a copy of this order by mail addressed to the following address: John M. Caplis, c/o James P. Caplis, 303 Fitchburg Square, P.O. Box 249, Folsom, CA. 95630; and James P. Caplis, 303 Fitchburg Square, P.O. Box 249, Folsom, CA. 95630." The District Court further ordered that James and John

> are hereby given notice that, unless another attorney is made of record in regard to this matter, all further notices pertaining to the litigation shall be deliverable to them at the above-referenced address and shall be effective as service upon him for all matters regarding the above-entitled litigation.

In a separate order issued that same day, the District Court ordered that the defendants appoint another attorney or, failing that, appear in person at a status conference set for November 27, 2001. The order warned that, absent their presence or their attorney's presence, the action may proceed to judgment.

¶10 The defendants failed to respond to plaintiffs' motion to compel. Thus, on November 7, 2001, the District Court issued an Order granting the plaintiffs' motion to compel responses to discovery. The defendants then failed to appear, either in person or through counsel, at the November 27, 2001, status conference. The District Court thereafter issued

4

an Order, dated December 11, 2001, giving the defendants twenty days from the date of the order to show cause why their default should not be taken and the case proceed to judgment. The District Court mailed the order to the defendants at the Folsom, California, address listed in its October 22 Order.

¶11 When the defendants failed to file further responsive pleadings within or subsequent to the twenty-day time limit, the plaintiffs, on January 2, 2002, filed a request for entry of default, the pleadings being again mailed to the Folsom, California, P.O. Box listed in the District Court's October 22 Order. On January 3, the District Court entered the defendants' second default. The District Court conducted a hearing on February 26, 2002, and, after receiving exhibits and hearing testimony, entered findings of fact and conclusions of law granting the plaintiffs the relief requested in their Complaint. On March 11, the plaintiffs served the defendants by mail with a notice of entry of the findings and conclusions. The District Court entered final judgment on March 28, 2002, and the plaintiffs served defendants, again by mail at the Folsom, California, P.O. Box, with a notice of entry of judgment on April 3, 2002.

¶12 The defendants thereafter retained counsel again, and, on April 24, filed a motion for relief from judgment and a request for trial on the their counterclaims. In their pleadings the defendants admitted receiving the plaintiffs' Rule 10(b), M.R.Civ.P., notice, via certified mail at the Folsom, California, P.O. Box, and acknowledged they were aware that a status conference had been set for November 27, 2001.

¶13 In a brief supporting their motion, James stated that he had changed his P.O. Box and

5

that he did not request a change of address because he did not anticipate further mail being sent to that address "relevant to his ongoing activities." However, James later noted in his brief that he "was obviously mistaken with respect to any notices related to the subject of litigation sent to that address." Nevertheless, James argued to the District Court that, irrespective of his mistake,

> it does not change the fact that [he] did not have any mail forwarded to his new post office box, P.O. Box 192 by the Folsom California Post Office. Moreover, despite Plaintiffs' contentions to the contrary, it also does not change the fact that [he] terminated the use of P.O. Box 249 and failed to receive the notices regarding ongoing legal proceedings in the subject litigation sent to that address by Plaintiffs' counsel.

¶14 On August 19, 2002, the District Court in a summary order denied the defendants' motion for relief from judgment. On August 28, the defendants sought leave to file a motion to dismiss their counterclaims without prejudice, and a request for entry of final judgment. They argued that, because the District Court's summary order and final judgment did not specifically dispose of or refer to their counterclaims, it was interlocutory in nature and non-appealable. The District Court denied the defendants' motion stating:

> This was simple judicial economy, as there was no need to address those matters in light of Defendants' default. However, by dint of their default, this Court intended and does now assert that the Judgment entered against them implicitly ruled on all issues in favor of Plaintiff. All of Defendants' counterclaims were dismissed <u>with prejudice</u> by that Judgment.

¶15 The defendants appeal from the District Court's October 7, 2002, Order.

**STANDARD OF REVIEW**

¶16 In reviewing a default judgment, we are guided by the principle that every litigated case should be decided on its merits; judgments by default are not favored. *Sun Mountain Sports, Inc., v. Gore*, 2004 MT 56, ¶ 10, 320 Mont. 196, ¶ 10, 85 P.3d 1286, ¶ 10. When appeal is from a denial of a motion to set aside a default judgment, our standard of review is that only a slight abuse of discretion need be shown to warrant reversal. *Gore*, ¶ 10. The party seeking to set aside a default has the burden of proof. *Gore*, ¶ 10.

**DISCUSSION**

¶17 *Did the District Court abuse its discretion in denying Appellants' Motion for Relief from Judgment pursuant to Rule 60(b), M.R.Civ.P.?*

¶18 Rule 60(b), M.R.Civ.P., provides in part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . . (6) any other reason justifying relief from the operation of the judgment.

¶19 The appellants argue that the District Court abused its discretion in denying their motion for relief from judgment and their motion to dismiss their counterclaims without prejudice, because the Court received, but refused to consider, evidence sufficient to support that relief. The appellants essentially argue, citing *Fennessy v. Dorrington*, 2001 MT 204, 306 Mont. 307, 32 P.3d 1250, that when a trial court receives any evidence to support a Rule 60(b) motion, that the issuance of a summary order is an abuse of discretion because such order does not reveal the court's reasoning nor the extent to which the court considered the evidence.

7

¶20    James argues that the District Court did not consider his allegation that, as a result of opening a new post office box associated with his new home address, he believed he no longer needed to check his other post office box because it was associated with his old home address and another business, Beacon Financial, Inc.  He further argues that the District Court did not take into account his allegations that he had numerous conversations with Stephen regarding possible settlement options and that he had received correspondence from Stephen at his home address rather than at his post office box.  James argues that this information established circumstances which would induce a reasonable person to believe that the parties were attempting to settle the matter without resort to further litigation, thus justifying their failure to hire an attorney or attend hearings.

¶21    Third, James argues that the District Court failed to consider that the respondents did not inform James, either verbally, via service at James' home address or via certified mail at James' old post office box, that litigation was ongoing.  James contends that this failure demonstrates concealment, fraud, misrepresentation and misconduct on the part of Stephen, and shows he was attempting to manipulate the judicial system to his own benefit and to the detriment of the appellants' right to defend themselves.

¶22    We first conclude that the appellants' reliance on *Fennessy v. Dorrington* is misplaced.  In *Fennessy*, the defendant filed a Rule 12(b)(6), M.R.Civ.P., motion to dismiss. The district court ruled on the motion prior to the expiration of plaintiff's ten-day time limit to respond and prior to the plaintiff receiving the motion, incorrectly deeming the motion well-taken because the plaintiff had not filed a response within seven days.  In spite of this

8

evidence, the court denied the plaintiff's motion to reconsider. *Fennessy*, ¶ 4. We reversed, concluding that the district court abused its discretion when it failed to consider that the plaintiff had not yet received the motion nor had the plaintiff's time to respond expired. *Fennessy*, ¶ 14. We did not, as defendants argue, hold in *Fennessy* that summary orders from a district court constitute an abuse of discretion where the moving party submits evidence on its motion for relief from judgment.

¶23 Irrespective of whether a district court enters a summary order or an order with a detailed memorandum, this Court's standard of review remains the same: whether the district court abused its discretion in refusing to set aside the default judgment. *Gore*, ¶ 10. We conclude that the District Court did not abuse its discretion in refusing to set aside the second default judgment.

¶24 Under Montana law litigants have a duty to monitor litigation, *see Griffin v. Scott* (1985), 218 Mont. 410, 710 P.2d 1337, and while default judgments are not favored, this Court has held that default judgments are proper upon facts establishing careless conduct or willful ignorance. *See Roberts v. Empire Fire and Marine Ins. Co.* (1996), 278 Mont. 135, 140, 923 P.2d 550, 553-54 (holding that improper handling of documents by management-level supervisor in charge of claims did not constitute excusable neglect); *In re Marriage of Castor* (1991), 249 Mont. 495, 499, 817 P.2d 665, 667 ("Mistake," "inadvertence," and "excusable neglect" require some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant or his attorney) (citing *Lomas and Nettleton Co. v. Wiseley* (7th Cir. 1989), 884 F.2d 965, 967).

9

¶25  In the instant case, the appellants knew that litigation was proceeding, knew that a status conference had been scheduled for November 27, 2001, failed to appear personally or to hire an attorney to appear on their behalf, and failed to notify the district court or the opposing party of their intention to miss the conference. The appellants were also made aware in the District Court's October 22, 2001, Order that service upon the post office box listed in the Order would be deemed effective service for all matters regarding the present litigation. James apparently ceased checking his mail at that post office box without submitting a change of address or notifying the District Court. Such actions do not constitute excusable neglect.

¶26  We also find disingenuous the appellants' argument that ongoing settlement discussions would induce a reasonable person to conclude that he need not monitor pending litigation, or would justify a party's failure to hire an attorney to protect a litigant's interests. It is typical for parties to entertain settlement offers or to engage in settlement discussions during litigation, but such discussions are not an excuse to neglect ongoing litigation.

¶27  Likewise, it is immaterial that Stephen did not verbally inform James of each document the respondents filed in the District Court or that Stephen did not serve James at his home address or via certified mail at his old post office box. Pursuant to the District Court's October 22, 2001, Order, service was properly made on the appellants via mail at the post office box listed in the Order and James was aware or should have been aware that such service would not change absent notification to the court. Further, it would be nonsensical to conclude that Stephen's act of serving all documents as required in the

10

District Court's Order constituted concealment, fraud, misrepresentation or misconduct. Nor does such lawful service reveal an attempt by Stephen to manipulate the judicial system or deny the appellants the right to defend themselves.

¶28 Based on the foregoing we conclude that the District Court did not abuse its discretion when it denied the appellants' Rule 60(b), M.R.Civ.P., motion for relief from judgment.

¶29 *Did the District Court err in dismissing Appellants' counterclaims with prejudice?*

¶30 The District Court entered findings of fact and conclusions of law on February 26, 2002, and entered final judgment on March 28, 2002. The Court's findings and conclusions did not explicitly mention or dispose of the appellants' counterclaims. The appellants then sought to file a motion to dismiss their counterclaims without prejudice, arguing that, absent an express finding by the District Court dismissing the counterclaims, the Court's previous order and judgment did not dispose of those claims. In its October 7, 2002, Order, the District Court denied the appellants' motion, stating that its previous Order did not mention the counterclaims out of simple judicial economy. The District Court concluded that, "by dint of their default, this Court intended and does now assert that the Judgment entered against [the defendants] implicitly ruled on all issues in favor of Plaintiff. All of Defendants' counterclaims were dismissed with prejudice by that Judgment" (emphasis in original).

¶31 The appellants first argue that, under Rule 54(b), M.R.Civ.P., the judgment granting the respondents' requested relief was interlocutory and not final because it left the counterclaims unresolved. Rule 54(b), M.R.Civ.P, provides:

11

When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

¶32 The appellants correctly note that this Court adheres to the doctrine of implied findings for purposes of reviewing findings of fact. That doctrine provides that where "findings are general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence." *State v. Wooster*, 2001 MT 4, ¶ 18, 304 Mont. 56, ¶ 18, 16 P.3d 409, ¶ 18 (citing *Interstate Brands Corp. v. Cannon* (1985), 218 Mont. 380, 384, 708 P.2d 573, 576); *also see Berry v. Romain* (1981), 194 Mont. 400, 407, 632 P.2d 1127, 1132 ("Any findings not specifically made but necessary to the judgment are deemed to have been implied if supported by the evidence," as long as such implied findings are not inconsistent with express findings). However, they rely on *Bauer v. Cook* (1979), 182 Mont. 221, 227-28, 596 P.2d 200, 204, in which we held that, absent judgment on a claim or general findings from which reasonable implications can be made, this Court could not imply from the trial court's judgment whether the defendants' counterclaim was with or without merit.

¶33 Based on *Bauer* and *Claver v. Rosenquist* (1972), 160 Mont. 4, 499 P.2d 1235, the appellants contend that because the District Court's October 22, 2001, Judgment did not

12

mention the counterclaims nor did the Court enter general findings from which this Court could imply facts and determine whether the appellants' counterclaims were with or without merit, we should reverse the judgment dismissing the counterclaims.

¶34     In both *Bauer* and *Claver*, the district court failed to enter either general or specific findings on the defendants' counterclaims subsequent to receiving evidence from all concerned parties, and this Court, unable to imply findings necessary to support the judgment, remanded for entry of such findings. *Bauer*, 182 Mont. at 227-28, 596 P.2d at 204; *Claver*, 160 Mont. at 13, 449 P.2d at 1240. However, in both *Bauer* and *Claver,* there was a trial on the merits of both the complaint and the counterclaims. Here, there was no trial. The appellants chose not to participate in or monitor the ongoing litigation. Thus, they did not pursue or present any evidence to support their counterclaims. When, subsequent to entering the defendants' default and after proper notice to the defendants pursuant to Rule 55(b), M.R.Civ.P., the District Court conducted a hearing on the default judgment, there was therefore nothing before the court to support the entry of general or specific findings on these claims.

¶35     Given that the appellants chose not to pursue their counterclaims or attend scheduling conferences or hearings, the appellants' assertion that the District Court somehow erred in not entering findings and conclusions on their counterclaims rings hollow. Moreover, because the subject matter of the present litigation was the allegation involving abuse of position as directors, officers and shareholders, the defendants were required to litigate their counterclaims in the present action. Rule 13(a), M.R.Civ.P. See also *Zimmerman v.*

13

*Conner*, 1998 MT 131, ¶ 9, 289 Mont. 148, ¶ 9, 958 P.2d 1195, ¶ 9 ("[T]he purpose of [compulsory counterclaims] is to avoid a multiplicity of suits by requiring the parties to adjust, in one action, their various differences growing out of any given transaction") (citing *First Bank, (N.A.) v. District Court* (1987), 226 Mont. 515, 521, 737 P.2d 1132, 1135); *Julian v. Mattson* (1985), 219 Mont. 145, 148, 710 P.2d 707, 709-10. Their failure to litigate the claims in this action therefore justified the dismissal of their counterclaims with prejudice.

¶36 The default judgment entered on the issues raised in the plaintiffs' complaint also serves to settle any compulsory counterclaims that arise out of the transaction or occurrence that is the subject matter of the plaintiffs' suit. *See Zimmerman*, ¶ 18; *First Bank*, 226 Mont. at 522-23, 737 P.2d at 1136; *Julian*, 219 Mont. at 148, 710 P.2d at 709-10. Also see *Loney v. Milodragovich* (1995), 273 Mont. 506, 905 P.2d 158, where this Court dismissed the plaintiff's claims because such claims could have been litigated in prior proceedings.

> While it is true that the specific issue of whether the unpaid attorney's fees were discharged in bankruptcy was not litigated in the Firm's action against Loney, the doctrine of res judicata bars not only issues which were previously litigated, but also issues which *could have been litigated* in the prior proceeding . . . . The fact that Loney did not answer the Firm's complaint and, as a result, that a default judgment was entered against him does not negate the fact that he had an opportunity to litigate the issue.

*Loney*, 273 Mont. at 510-11, 905 P.2d at 161.

¶37 Based on the foregoing, we conclude that the District Court did not err in failing to make specific findings relative to the appellants' counterclaims. Such counterclaims were deemed dismissed and *res judicata* when the District Court entered its March 28, 2002, final

14

judgment in favor of the respondents. A litigant will find no relief where, through careless misconduct or willful ignorance, he or she fails to monitor litigation and to responsibly prosecute claims. *In re Marriage of Castor*, 249 Mont. at 499, 817 P.2d at 667.

¶38 The appellants' final argument is that, pursuant to Rule 54(c), M.R.Civ.P., the District Court is limited in the scope of its judgment to the relief prayed for in the demand for judgment. Rule 54(c), M.R.Civ.P., provides:

> A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

The appellants argue that, as a matter of law, the District Court exceeded its jurisdiction in dismissing their counterclaims because the respondents, in their pleadings and in their demand for default judgment, failed to specifically pray for relief with respect to the appellants' counterclaims.

¶39 We are unpersuaded by the appellants' argument. Rule 54(c), M.R.Civ.P., specifically states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." The District Court clearly has authority to grant whatever relief is necessary to effectuate its judgment. *See Goodover v. Lindey's* (1992), 255 Mont. 430, 438, 843 P.2d 765, 770. As noted above, dismissal of the appellants' counterclaims was part and parcel of the District Court's final judgment, and the District Court had the authority to dismiss those claims.

¶40     The judgment of the District Court is affirmed.


                                        /S/ PATRICIA O. COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE